### LOWENFELD v. CURTIS et al.

#### (Circuit Court, S. D. New York. January 8, 1896.)

**1. PRACTICE—PRELIMINARY INJUNCTION—SECURITY FOR DAMAGES.**

A suit was instituted by an agent of the complainant to restrain the production of a play by defendants. It appeared that complainant was entitled to a preliminary injunction, but the complainant being a nonresident alien, and the defendants questioning the right of his agent to

bring the suit, *held*, that security for damages resulting from the injunction, if the defendants should ultimately prevail, should be required, as a condition of granting it.

**2. CONTRACTS—BREACH—WAIVER—APPROVAL OF CAST OF PLAY.**
　　L., a resident of London, made a contract with C., a resident of New York, by which he gave to C. the right to produce a certain play, upon the condition, among others, that C. should "submit to the said L. for his approval the names of the various artists to be engaged for the performance of the play." On December 20, 1895, C. wrote to L. at London, sending him a list of the proposed cast for the play, and on December 25th, before the letter could have reached L., commenced the performance of the play. L. replied to the letter, without expressing disapproval of the cast, but it did not appear that he then knew that performances had been begun. *Held*, that C.'s performance of the play before the letter submitting the cast could have reached L. was a violation of the contract, which, under a clause providing that a failure to comply therewith should forfeit all rights, entitled L. to an injunction, and that there had been no waiver of the breach by L.

**3. SAME—INTERPRETATION.**
　　*Held*, further, that the plain terms of the contract could not be affected by evidence of the purpose of such conditions or of the interpretation commonly placed upon them by theatrical managers.

**4. SAME—WAIVER—SECOND BREACH.**
　　It subsequently appeared that C. informed L. of the performances commencing on December 25th, and remitted to him the agreed percentage of the receipts therefrom, which L. accepted without objecting to the cast, and this was claimed as a waiver of the breach; but it also appeared that C. had afterwards made substantial changes in the cast, without submitting the names of the actors to L. *Held*, that the waiver did not apply to the second breach, and the injunction should not be vacated.

Robert C. Beatty, for complainant.

Mr. Howe, A. H. Hummel, and Benjamin Steinhardt, for defendants.

Motion to Vacate Stay.

(January 8, 1896.)

LACOMBE, Circuit Judge. While the affidavits and papers submitted indicate that every other question in controversy is vehemently disputed, they show conclusively that defendants' only title to the play comes under the contract with the complainant, and, as such, is to be exercised in conformity to the terms of that contract. The weight of evidence so far adduced shows nonapproval of the cast, or, at least, of defendant Curtis in the title roll. The present stay will therefore be continued until hearing and decision of the main motion; but as complainant is a nonresident alien, and defendants question the authority of his agent to bring this suit, complainant must file security for damages, if any, resulting from the stay should defendants ultimately prevail, in the amount of $1,000, and may have the whole of January 9th to prepare and file such bond.

(January 13, 1896.)

Motion for preliminary injunction to restrain defendants from performing a play known as "Gentleman Joe." The motion is made on bill, affidavits, and opposing affidavits.

LACOMBE, Circuit Judge. The defendant M. B. Curtis holds a written contract, duly executed by the complainant, purporting to lease to Curtis the performing rights for the United States and Canada of a certain play owned by complainant, and known as "Gentleman Joe." The contract expresses a consideration, and contains sundry covenants and conditions, some of which will be hereafter referred to. This contract, after execution by complainant, with the manuscript of the play and two music scores, was delivered in escrow to the Bank of New York. They were subsequently delivered by the bank to Curtis, upon payment of $2,500. This was on October 21, 1895, the date of the contract being filled in as of that day; and thereupon Curtis mailed a duplicate original, signed by himself, to the complainant, in London. There is no dispute that the bank acted in good faith and in strict accordance with the instructions it had received in making such delivery. The complainant contends that Curtis was not entitled to receive these documents; that the proposed contract never became a binding agreement, for the reason that complainant's offer was not accepted by Curtis within the time allowed; and that defendant obtained the papers from the bank by "trick and artifice on his part," and in fraud of complainant's rights. It is unnecessary to set out the details of these averments. The burden of proof is on complainant, and, although he supports his charges with affidavits in addition to the bill, they are met with counter affidavits on the other side, resulting in a conflict of proof, which, as already intimated upon the argument, this court will not undertake to determine preliminarily to the trial, and without the opportunity of weighing the respective allegations of fact in the light afforded by cross-examination of the affiants. This motion will be disposed of, therefore, on the assumption that Curtis, on October 21st, came rightfully into possession of the written contract and manuscript copy of the play, with accompanying scores, and upon such facts only as are not in substantial dispute.

The fourth clause of the contract reads as follows:

"Fourth. The said M. B. Curtis hereby undertakes (a) not to perform the play less than one hundred and forty times in any year in the United States or Canada; (b) not to make any alterations or additions to the said play without the written consent of the said Henry Lowenfeld; and (c) to submit to the said Henry Lowenfeld, for his approval, the names of the various artists to be engaged for the performance of said play, but such approval shall not be unnecessarily withheld."

The defendants have produced the play in Newark, N. J., and at the Fifth Avenue Theater in this city. Affidavits are produced from persons who witnessed such performances, and who assert that they are familiar with the play of Gentleman Joe, from having witnessed it in London. They assert that in many important particulars the defendants' performance is unlike the original composition, and they specify the points of difference. It is averred that eight songs are omitted which are claimed to be essential to the working out of the plot and the proper interpretation of the author's lines; that among these songs is one entitled "He [or "She"; it appears both ways in the affidavits] Wanted Something to Play with," said to

have attained a very wide popularity, and to have been so identified with the play as to serve as one of the best mediums for making it known to the public; that in the dialogue there are absent many necessary lines that are contained in the London version; that the orchestration is different; that a great part of the dancing is left out, including all the dancing in the first act; and that in the second act certain variety specialties are produced which had no place in the original play. To these specific allegations the defendant replies with the simple statement that "the play as produced is precisely as it was furnished at the time he paid the $2,500." The accuracy of this statement may be easily determined, should it become necessary to do so, by the production of the manuscript and of the two scores which defendant received from the bank; and it is to be presumed that the complainant himself has copies of these documents.

It will be observed that these alleged variances from the original are in part omissions and in part additions. As to the omission of any features of the play as it was produced in London, but which are not contained in the manuscript and the two scores, defendant refers to correspondence between complainant and himself. On October 21, 1895 (the day he obtained the documents from the Bank of New York), Curtis wrote to Lowenfeld advising him of that fact, and asking the latter to send him "the photographs of all the company, also property, gas, and scene plots, and full orchestration," and inquiring if "the American rights of the song 'He Wanted Something to Play with' are included in my contract, as there is an irresponsible party singing the song here in music halls, which I wish at once to enjoin, as I should like to sing it myself in Joe." To this letter Lowenfeld replied, on November 14th, that Curtis' action in taking the contract was a great surprise, "as it was quite understood that the matter between us was off, and that Mr. Aronson had the call of the piece until his arrival here," and adds: "But I understand that everything has been finally settled between you and him, and therefore I am giving him all the business you write for." Lowenfeld's action in delivering this "business" to Aronson was manifestly based upon his understanding that Curtis had no right to the contract, that Aronson was the one to whom he had leased the performing rights for the United States, and upon the supposition that the latter had made some arrangement with Curtis. From the complainant's point of view, he was entirely right in refusing to send these photographs, plots, and full orchestration to Curtis, but, as before stated, it cannot be assumed upon this argument that his understanding of the situation was correct. He may establish it to be so on the trial, but at this stage of the case the propriety of his action must be determined upon the theory that Curtis had a valid contract. This being so, he cannot complain of the omission from Curtis' representation of anything that is contained in the additional documents which Curtis asked for, and is not contained in the manuscripts and the two scores which were delivered with the contract. Additions to the play, however, are wholly unwarranted, except upon the written consent of the com-

plainant. Defendant was entitled to produce the play only in strict conformity to the manuscript and scores.

The only remaining question is as to the selection of the persons engaged in the performance. The contract requires the defendant Curtis to submit their names to the complainant for approval, such approval not to be unnecessarily withheld. When argument was had on the continuance of the stay, there was not satisfactory evidence of any such submission, and the proof tended strongly to indicate a distinct disapproval of Curtis himself in the title role. Further proof on this branch of the case has since been adduced. It now appears that on December 20, 1895, Curtis wrote to Lowenfeld, stating that he therewith submitted the cast of Gentleman Joe, in accordance with the contract of October 21, 1895, and adding some words of commendation of the persons selected. Inclosed with this letter was the complete cast, with Curtis' name in the title role, and letters of H. C. Miner and Charles Frohman expressing favorable opinions of the company. The first performance given by the defendant was at Newark on December 25th, and, as at that time it was physically impossible that the names thus submitted for approval could reach the complainant until two days after the performance, this was a flagrant violation of the contract.

The clause requiring a submission of the names for approval is manifestly inserted in the interest of the grantor, and any violation of it may be waived by him. He need not insist upon the submission at all, and if he knowingly permits performances to go on without objection, no names having been first submitted, it is to be presumed that he has waived this provision; or, names being submitted and a reasonable time elapsing without objection on his part, it may be inferred that he approves the selection, especially in view of the concluding words of the paragraph, "but such approval shall not be unnecessarily withheld." Relying upon these well-settled principles, defendants' counsel contends that this conceded violation of the contract should not work a forfeiture, in view of complainant's reply to defendant's letter of December 20th, inclosing the cast. This reply reads as follows:

"Your letter and inclosures are to hand. I explained to you in my last letter how the matter stands, and I sincerely hope that there will be no difficulties between you and Mr. Aronson, as this would be detrimental to all interests concerned."

It is insisted that because this does not expressly state that the cast is disapproved of, nor ask for further time to investigate as to the fitness of the individuals suggested to play the different characters, it is to be taken as an approval, or, at least, as a waiver of any failure to comply with the terms of the contract requiring submission of the names. A party, however, is not to be held to have waived his rights by reason of what he may say or do when he is ignorant of the facts; and there is not a scintilla of evidence tending to show that when Lowenfeld received the cast, on December 27th or 28th, and wrote the reply above quoted,

he had any suspicion that defendants had produced the play two days before. It is manifest that, ever since the contract was delivered to Curtis, complainant has insisted that the latter was not entitled to it. His letter of November 14th makes this plain. He wanted to get rid of Curtis and his contract; to that end, had brought this very suit; and it is inconceivable that, if he had known on December 28th that Curtis had deliberately broken that contract, he would have waived any rights inuring to himself by reason of such breach.

The affidavit of a theater manager has been submitted to the effect that the reservation of a right to approve the company is simply to prevent thoroughly incompetent performers from appearing on the stage of a first-class theater; that managers do not refuse to approve of a proper cast, made up of reputable actors; and that such objections are never made until after the production of the piece, and one or more of the actors have shown their incompetence to perform the part. And there are many affidavits testifying to defendant Curtis' ability as a star actor, and to the merit of the members of his company. But the difficulty with this agreement is that we are dealing with a written contract, expressed in positive language, without the slightest ambiguity. By its terms, Curtis undertakes "to submit to the said Henry Lowenfeld, for his approval, the names of the various artists to be engaged for the performance of said play." There may be room for argument as to how far any particular disapproval is or is not capricious or unsound or not fairly within the reservation of the contract, or whether a delay in acting upon the names proposed is or is not unreasonable; but there can be no doubt whatever, that the opportunity for expressing approval or disapproval must be afforded to the party of the first part, and must be so afforded before performance, for it is the names of the artists "to be engaged for the performance" which are to be submitted. No explanation is given of the failure to submit the names of the proposed cast until a day so late that it would be impossible for complainant to receive and consider them. The requirement that the play should be first produced on or about January 1, 1896,—a requirement which would be fairly complied with by production a few days after January 1st,—did not make it necessary to produce it on December 25, 1895. If it were only a question of the title role, enough might be found in the papers to spell out a submission of Curtis' name so long a time in advance of any performance that the failure of complainant to notify him that he disapproved of his taking that part (and complainant never seems to have himself given such notice directly to Curtis) might be taken as sufficient to warrant the inference that he approved. In the letter of October 21st, after inquiring as to the American rights of the song "He Wanted Something to Play with," Curtis adds: "I should like to sing it myself in Joe." This may fairly be held to be a submission of his own name as performer of the title role, but is by no means a compliance with clause c of the fourth paragraph,

which, for obvious reasons, requires a submission of the names of the "various artists to be engaged."

The defendant, therefore, has broken the terms of his contract in what is certainly a material particular, and no excuse for such breach is shown. The seventh clause provides that, "should the said M. B. Curtis fail to fulfill any * * * of the above terms, * * * he thereby absolutely forfeits all rights to the performance of said play." It may be that, when all the testimony is adduced on the trial, there will be found some sufficient excuse for this flagrant violation of the express terms of the contract; but, as the case now stands, upon the undisputed facts, it is difficult to see upon what theory defendants claim that they have still the right to perform the play.

The motion is granted, order to be settled on two days' notice.

(February 3, 1896.)

Motion to vacate preliminary injunction.

LACOMBE, Circuit Judge. Since the occurrence of the facts recited in the former opinion, it appears that on January 1, 1896, defendant Curtis wrote to the complainant, in London, informing him of the six performances at Newark on December 25th and following days, stating that the box-office receipts therefor were $2,211, and that $221.10 was the percentage due to complainant, in accordance with the terms of the contract. To this, complainant, on January 15, 1896, replied, acknowledging the "letter and returns," expressing regret that trouble should have arisen, and making no objection to the cast with which the Newark performances had been produced, and of which he had been informed by Curtis' former letter of December 20th. Defendants' counsel contends that this operates as a waiver of the breach of contract on which preliminary injunction was granted, viz. producing the piece without giving Lowenfeld opportunity to examine the cast and express approval or disapproval. Complainant's counsel insists that the letter of January 15th must have been written under a mistake of fact as to the situation existing at the time, and asks for an adjournment. There is no sufficient reason for granting an adjournment. If the complainant has not sufficient intelligence to appreciate the desirability of consulting his counsel as to the existing situation of his case before replying to the letter of an adversary with whom he has embarked in a lawsuit, there is no reason why the court should be astute to relieve him from the consequences, since he does not sue as an infant, nor as one incapable of conducting his own business.

It does not follow, however, that this motion should be granted. Construing the letter of January 15th as a waiver of the breach which was the ground of the injunction, the utmost that can be fairly claimed for it is that it operates as an approval of the cast submitted in Curtis' letter of December 20th, and with which the play was produced at Newark. The piece, however, was subsequently played in New York, with four changes in the cast. That

these changes were substantial is indisputable, since they included the title role, which was played by Willard Lee, instead of M. B. Curtis, whose name was the only one submitted for approval to complainant. There is no protense that Lee's name was ever submitted to Lowenfeld, nor any opportunity given him to approve or disapprove. Defendants' counsel construe the fourth clause of the contract as if it read simply, "Competent actors only shall be allowed to play." It is not susceptible of such construction. It provides that approval shall not be unreasonably withheld, but, as was pointed out in the earlier opinion, distinctly and expressly provides for a submission of the names to Lowenfeld, and opportunity to express approval or disapproval. Where the language of a written contract is not ambiguous or technical, and there is no evidence of fraud, omission, or mistake, courts will not alter its terms. O'Brien v. Miller, 14 C. C. A. 570, 67 Fed. 605. Under this clause, as it reads, the party of the second part must "submit the names" of the proposed actors for approval, and if he wishes to provide for the appearance of an "understudy" in any substantial and important part, in case of the unexpected inability of the actor selected for that part to perform, he should submit the name of the "understudy" as well. As the written contract in this case is unambiguous, the court should determine all questions arising upon undisputed facts according to its terms, until some modification of those terms be effected by acts of the parties, or until some equitable estoppel may preclude one or the other from insisting upon its observance. The circumstance that this second breach occurred after the commencement of the suit is immaterial. Equity practice does not require the institution of a new suit where the matters complained of may be appropriately set forth in a supplemental bill, which is the case here.

The motion is denied, and preliminary injunction continued.